# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br><br>DAVID MEDNANSKY, MARTINE MEDNANSKY, individually,<br><br>Defendants. | CASE NO. 10cv1307-LAB (BGS)<br><br>**ORDER DENYING CERTIFICATION OF ISSUES FOR APPEAL;**<br><br>**ORDER DENYING STAY PENDING APPEAL; AND**<br><br>**ORDER GRANTING ADDITIONAL EQUITABLE RELIEF** |

## I. Procedural Background

On March 8, 2011, the Court issued an order granting in part the United States' motion for summary judgment, which it construed as a motion for partial summary judgment. That order directed the United States to submit a proposed order granting the requested injunctive relief, and Defendants were given an opportunity to object to the proposed order. Defendants filed no objections, and the order was issued on March 25, 2011. Among other things, the March 25 order granted injunctive relief, requiring Defendants to vacate the property that is the subject of this litigation within 30 days.[1]

---

[1] Because the thirtieth day fell on a Sunday and a holiday, Defendants were required to vacate the premises no later than Monday, April 25, 2011. *See* Fed. R. Civ. P. 6(a)(1)(C).

On April 5, counsel for the parties jointly contacted the Court, during which time Defendants' counsel announced she would, that same day, be filing a motion appealing the Court's grant of summary judgment and seeking a stay of the March 25 order. No such motion was filed, however, until now.

On April 29, the United States filed an *ex parte* application representing that the Defendants had not vacated the cabin, and seeking an order both authorizing the use of reasonable force to remove them and requiring them to show cause why they should not be held in contempt. On May 3, the Court issued an order to show cause, requiring Defendants' counsel to file a response to the April 29 application. The Court's order specified that the response was not to exceed seven pages, and was to address the application only, not to seek reconsideration of earlier orders.

Defendants' counsel then on May 4 filed a ten-page response (the "Response") asserting the Court had erred in its grant of summary judgment. The Response also incorporates the motion Defendants' counsel said she would be filing April 5. In spite of the Response's failure to comply with the Court's order, it will be accepted and addressed on the merits. Later that same day, Defendants' counsel filed a notice of appeal of the Court's order of March 25. They have not paid the filing fee, moved to proceed *in forma pauperis*, or sought a stay from the Ninth Circuit.

## II.   Relief Requested in the Response

The Response seeks entry of judgment under Fed. R. Civ. P. 54(b) as to the claims on which summary judgment was granted. It also seeks a stay of the injunction pending appeal.[2] The notice of appeal does not automatically stay the injunction; a stay may be granted either by this Court or the appellate court. Fed. R. Civ. P. 62(a),(c), (g). Neither the Response nor the notice of appeal addresses the issue of a bond, and in fact the Response's allegations suggest Defendants are unprepared to post a bond or other security. *See* Rule 62(c), (d) (providing for posting of bond to protect appellees' rights).

---

[2] The Response seeks a stay "pursuant to FRCP 8(a)(1)." (Response, 1:4.) Presumably this should be Fed. R. Civ. P. 62(c).

The Response expresses doubt whether the Ninth Circuit will find the Court's order of March 25, which grants an injunction, falls within the category of orders immediately appealable under 28 U.S.C. § 1292(a)(1), and requests Rule 54(b) certification as a backup. There is no need for such an additional certification. Because the Court granted injunctive relief, Defendants' request for Rule 54(b) certification is moot. *See TCR Holdings, LLC v. Nye County, Nev.*, 2010 WL 2773432, slip op. (D.Nev., July 12, 2010) (following grant of injunctive relief, holding that motion for final judgment was inappropriate) (citing 28 U.S.C. § 1292(a)(1)).

Defendants bear the burden of showing that a stay is appropriate. *See Nken v. Holder*, 129 S.Ct. 1749, 1761 (2009) ("The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion.") A stay pending appeal "is not a matter of right, even if irreparable injury might otherwise result." *Id*. at 1760. Rather, the Court considers four factors: likelihood of success on the merits, irreparable injury, substantial injury to other parties, and the public interest. *Id.* at 1761 (citing *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

**A. Likelihood of Success on the Merits**

The Response argues Defendants are likely to prevail on the merits. It recites its own distorted reading of the facts and of the Court's order granting partial summary judgment. And it offers some authority and evidence that could have been presented before, but that would not have changed the outcome in any event.

This is the third in a series of lawsuits concerning Defendants' use of this property, and Defendants have prevailed in none of them, either in this Court or on appeal. In the first, 07cv1425, *Mednansky v. Gillett*, the Mednanskys sued Forest Service officials under a *Bivens* theory for a wide variety of perceived wrongs. This Court granted summary judgment, and the Ninth Circuit summarily affirmed, dismissing the appeal as frivolous. In the second, 09cv1478, *Mednansky v. Metz*, the Mednanskys sued Forest Service officials seeking relief for Forest Service officials' allegedly improper refusal to renew the use permit that gave them the right to live in the cabin where they are now squatters. This Court

dismissed some claims without leave to amend, and others without prejudice. Rather than attempting to amend, the Mednanskys took an appeal, which they have apparently now abandoned.[3]

The Court did not, as the Response charges, weigh evidence, ignore admissible evidence, or repeatedly disregard the standard for summary judgment; and the Court's order is in harmony with the Response's newly-cited authority. The Response also focuses on the narrow issue of whether Defendants were or were not in violation of applicable regulations while their now-expired use permit was in force, if that were the determining issue of this case. Furthermore, the Response is peppered with claims and supported by assertions already found meritless in earlier actions. Defendants' remedy for adverse decisions on those issues was to seek reconsideration or appeal (which they did, without success), not to relitigate them afresh in this case. The Court finds no likelihood of success on the merits on appeal.

### B. Irreparable Harm to Defendants

Defendants can show they would suffer some irreparable harm, since denial of the stay would result in eviction, and possibly in destruction of the buildings they hoped to reclaim. Defendants assert the eviction itself would be degrading and injurious, but whether they merely suffer the inconvenience of a voluntary, orderly departure or incur the emotional trauma of involuntary removal by the authorities was and is entirely up to them. Defendants also assert they are having a difficult time finding a new place to live, and would have to live on the street if forced to leave now. But they provide no evidence they have been diligently looking or taking steps to move since the Court made clear nearly two months ago they would be required to leave.

/ / /

---

[3] The docket in that case, number 10-56524, shows nothing has been filed in the docket and no action has been taken since the appeal was docketed on September 27, 2010. The docket contains a single document, a scheduling order. Under that scheduling order, the Mednanskys were to have filed their opening brief and excerpts of record no later than January 3, 2011. Although the scheduling order cautions appellants that if they don't comply with the scheduling order their appeal will automatically be dismissed, the docket is still open. The inactivity of the appeal was pointed out in the Court's March 8 order.

1   The Response argues Defendants are at special risk because the cabin is the only place they can live. As pointed out in the March 8 order, it was undisputed that permit holders were not allowed to rely on cabins as their sole residences, but were required at least to have some other residence available to them. If Defendants were violating this requirement, the resulting harm is their responsibility. Requiring the government or the public to bear the burden is unjust.

   In short, Defendants' own self-imposed hardships do not weigh heavily in this analysis.

### C. Harm to Other Parties

   The Response argues the United States will suffer "absolutely no harm" if the stay is granted (Response, 8:4), but this is not true. Defendants have been squatting in a cabin on public land since their use permit expired in 2009. They are not paying annual fees, which are the equivalent of rent. The Court has determined they will owe back rent for those years. For several years they have also refused to maintain the lot and buildings as the Forest Service determined was required, and instead are using the area as they deem fit. The Court has determined they will be responsible for cleanup costs on the lot. Defendants may also be responsible for the costs of removing buildings, and any property they may abandon when they leave.

   The Response implies Defendants will be unable to pay the full amount of a judgment, and makes no proffer of a bond or any other security. *See* Fed. R. Civ. P. 62(c) (authorizing district court to stay an injunction pending appeal "on terms for bond or other terms that secure the opposing party's rights"). Granting a stay pending a full appeal, and allowing Defendants to continue squatting indefinitely in the cabin rent-free would impose a monetary loss on the United States. Because they are effectively unregulated by the Forest Service, a stay would continue to thwart the Forest Service's efforts to enforce land use regulations. None of these injuries would be compensable by a damages award. The United States' loss of money and of use of public land therefore figures into the analysis.

/ / /

### D. Public Interest

The public interest factor weighs against the Defendants. The land Defendants are squatting on is public land, not their own land. The public has a legitimate interest in using it, rather than being excluded by trespassers. The public also has an interest in seeing the land's use effectively regulated by the Forest Service. Likewise, the public interest is not served by accommodating or encouraging dilatory tactics to prolong the trespass.

### E. Equity

In making rulings affecting equitable relief, the Court is also mindful of equitable principles. Defendants' counsel has been aware of the basis for the Court's ruling since March 8, nearly two months ago and could have filed a notice of appeal then. She was prepared on April 5 to file a motion seeking a stay pending appeal, but never did so until now, well after Defendants were in violation of the injunction and on the eve of their removal from the property by the United States This apparently strategic delay bespeaks an intention to buy time and interfere with the removal, without regard for the merits of the action or the appeal. *See* Fed. R. Civ. P. 11(b)(1) (identifying unnecessary delay as an improper purpose for filing a motion).

The lengthy delay and last-minute filing also meant the request for a stay could not be filed as a noticed motion, or even a noticed motion with an shortened briefing schedule, *see* Civil Local Rule 7.1(e)(5), but had to be filed *ex parte. See* Response, Proof of Service (Docket no. 35-4) (showing that the United States was served with the Response after it was filed). Defendants did not comply with applicable local rules in doing so. *See* Civil Local Rule 83.3(h)(2) ("A motion for an order must not be made ex parte unless it appears by affidavit or declaration . . . that within a reasonable time before the motion the party informed the opposing party or the opposing party's attorney when and where the motion would be made . . . .") The needlessly delayed filing therefore unwarrantedly put on the United States the task of responding in haste to a ten-page brief, while trying to enforce the injunction.[4]

---

[4] In fairness to the United States, the Court is prepared to rule now, and will not require a response.

This too bespeaks an intent to impose needless delay or extra burdens, or both, on an opposing party.

Considering the required factors, the Court therefore finds a stay would be inappropriate. General considerations of equity further support the denial of a stay.

### F. Request for 30-Day Stay

The Response alternately seeks a 30-day stay of eviction to allow them time to relocate. But if, as the Response argues, Defendants are having a difficult time finding a new place to live, they should have raised this long before now, and provided evidence of their diligence. As discussed in the following section, the Response falls far short of doing so. Defendants have not shown why a 30-day stay would be appropriate.

## III. Order to Show Cause and Additional Equitable Relief

Because the Court ordered Defendants to show cause why the order should not issue, they were obliged to provide any relevant information, explanations or evidence. The Response makes no substantial effort to respond to the order to show cause.

The only gesture towards complying with the Court's order to show cause was the inclusion of arguments that moving out would be hard on Defendants. But this hardship appears to be entirely their own fault. Defendants have long resisted efforts to move them from the cabin they once held a permit to use, and they should have anticipated being evicted. In *Mednansky v. Metz*, they attempted unsuccessfully to show that their use permit, which had expired in 2009, should be renewed. After that effort faltered, the fact that they no longer had a valid use permit should have put them on notice that they risked eviction from national forest land. And they have known for almost two months that their departure was imminent. The Response says almost nothing, and certainly nothing very specific, about their efforts to comply.

The Response relies chiefly on general and unsupported representations. It alleges, for example, that the Defendants are "in good faith, attempting to secure a place to live in the event the stay and/or the appeal are denied." (Response 8:24–9:5.) This is insufficient for three reasons. First, they have known since at least March 8, 2011 that the Court would

1   issue an order resulting in their eviction, and that when the order issued they would have no
2   more than 30 days to move.  They should have begun preparing for that date immediately,
3   not pinning their hopes on a motion for a stay or an appeal that wasn't filed until almost two
4   months later, well after they should have been out.  In fact, their working assumption at this
5   point should be that they must immediately leave.

6   Second, this general allegation, unsupported by evidence, doesn't show they have
7   been making adequate preparations to move out; looking for a place to live is only one of the
8   steps they should have taken.

9   Third, this allegation about a good-faith attempt does little to demonstrate their
10  diligence.  It doesn't say when they started attempting to find a place to live, or discuss how
11  extensive their efforts have been, or even what they have done.  It discusses in generalized
12  terms a work-for-rent situation the Defendants are hoping for, but it doesn't address any
13  other options they have pursued.  The Defendants have a modest disability income, and
14  reside near the town of Alpine, where housing costs are relatively low, so some evidence or
15  at least detailed explanation why they could not find any affordable, acceptable housing
16  anywhere in the last two months would have been in order.

17  The Response also, without elaboration or support, predicts "economic hardship,
18  emotional and physical hardship, and [inability to] meet their medical needs." (Response,
19  8:20–22.) The only pertinent evidence is an affidavit from David Mednansky discussing his
20  and his wife's poor fragile condition and predicting if evicted they will be forced to live on the
21  streets.  There is no showing why the Defendants' medical needs prevent them from
22  voluntarily moving anywhere else.  And, bearing in mind the lack of information about the
23  Defendants' efforts to secure alternate housing, the prediction about living on the streets
24  appears to be little more than a conclusion.

25  The Response also attempts to resurrect a claim that  the Forest Service is to blame
26  for the Defendants' financial condition. (Response, 8:15–18.)  Those claims were fully
27  litigated and rejected in 07cv1425, *Mednansky v. Gillett*, which is final, the appeal having
28  been summarily dismissed as frivolous.

### IV. Clarification of Earlier Order

The Court has reviewed its March 25 order, and finds the first numbered paragraph somewhat unclear. That paragraph says "The Government's motion for partial summary judgment is granted, and judgment is entered in favor of the Government." The Court now clarifies that summary judgment was granted only as set forth in the March 8 order, which granted summary judgment only on some claims, not all. The purpose of this paragraph was to explain that summary judgment had already been granted on some claims, not to extend summary judgment to other claims.

### V. Conclusion and Order

Defendants' request for a Rule 54(b) certification is **DENIED** as moot. Their request for a stay is **DENIED** without prejudice to any ruling by the Ninth Circuit. Their request for a 30-day stay is also **DENIED**.

The Court finds the Defendants have failed to show cause as ordered why the order sought by the United States should not issue, and **GRANTS IN PART** the unopposed *ex parte* application. For good cause shown, it is hereby **ORDERED** as follows:

1. United States law enforcement officers, including the U.S. Marshals Service and U.S. Forest Service Law Enforcement, along with any other supporting law enforcement agencies (collectively, "Law Enforcement") may use all reasonable force to enforce the Court's March 25, 2011 order at any time.

2. Law Enforcement may use all reasonable force to physically remove Defendants, and all persons found on Lot 7 who have notice of the March 25, 2011 Order, from Lot 7 of the Pine Creek Recreation Residence Tract in the Cleveland National Forest at any time.

The Court will not at this time require the Defendants to show cause why they should not be held in contempt. Nevertheless, the Court's order issued March 25, 2011, and all other orders of the Court, remain in effect and Defendants remain obligated to obey them.

**IT IS SO ORDERED**.

DATED: May 5, 2011

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge